IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEON BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2017 CV 8959 |
| v. | ) | |
| | ) | Hon. Judge Franklin U. Valderrama |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| EVARISTO P. AGUINALDO JR., and | ) | Magistrate Judge Susan E. Cox |
| ESTATE OF SALEH OBAISI, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR COSTS TO PAY OR FOR APPOINTMENT OF MEDICAL EXPERT**

*Defendants oppose this motion and request time within which to file a written response.*

Plaintiff LEON BARNES JR. ("Mr. Barnes"), by his undersigned counsel and pursuant to Local Rule 83.40 and/or Federal Rule of Evidence 706, respectfully requests that this Court grant him a budget of up to $7,500 with which to pay a retained expert pursuant to D.C.F. REG.3(A)[1] or, in the alternative, appoint an expert witness to assist the jury in understanding the scientific and medical evidence in this case with the costs to be paid by the Court (up to said amount of $7,500). In support of his motion, Barnes hereby states:

**I. INTRODUCTION**

Delay is an important element in this case. The plaintiff, Leon Barnes, had sought treatment for hemorrhoids for a period of years before he was finally granted an off site visit

---

[1] D.C.F. REG. 3(A) provides that "[w]here approval is required prior to incurring expenses, the request for authority to incur the expense shall be made by motion submitted to the judge to whom the case is assigned. The motion shall set forth briefly the reason for the request and the estimated amount of the expense."

1

with a physician at UIC who confirmed that he needed a surgery which should proceed after he received a specific kind of physical therapy, therapy he was then denied until over a year after things had gotten so bad that he felt compelled to file this lawsuit. *See* Docket no. 1 (this case was filed in December, 2017).

As the Court concluded in *Dean v. Wexford Health Sources, Inc.,* 2019 U.S. Dist. LEXIS 219301, *2-4, 2019 WL 7041649 (N.D. Ill. 2019), evidence from which to conclude that Wexford and its physicians (the defendants in this case) were aware of a systemic problem with delays in treatment were provided by experts in the class action litigation known as *Lippert v. Godinez*, (N.D. Ill. Case no. 10 CV 4603):

> "The first court-appointed expert report in *Lippert* found 'breakdowns in almost every area, starting with delays in identification of the need for the offsite services, delays in obtaining an authorization number, delays in being able to schedule an appointment timely, delays in obtaining offsite paperwork and delays or the absence of any follow-up visit with the patient.' (Plaintiff's trial exhibit PTX194-0029.) The second court-appointed expert report in Lippert found 'no improvement since the First Court Expert's report. Our opinion is that the specialty care process of collegial review is a patient safety hazard and should be abandoned until such time that patient safety is ensured.' (Plaintiff's trial exhibit PTX193-0064)....
>
> "Defendants are correct that several district courts have ruled that these reports are inadmissible hearsay when offered for the truth of the matters asserted therein. The Seventh Circuit has agreed. *Wilson v. Wexford Health Sources, Inc*., 932 F.3d 513, 522-23 (7th Cir. 2019)(collecting cases). However, these cases do not address whether the reports are admissible for a nonhearsay purpose. The Court agrees with Plaintiff that the reports are admissible for a nonhearsay purpose: to show notice to Defendants (particularly, to Wexford) that court-appointed experts had reported systemic problems with the process for obtaining offsite diagnostic tests and offsite care, the same issues in this case.... The reports are relevant as to notice, and notice is relevant to the deliberate indifference inquiry on the Eighth Amendment claim. Admission of the reports for notice purposes only was not unfairly prejudicial – Defendants were free to and did offer evidence disputing the reports' conclusions, and the jury was instructed to consider the reports only as to notice of the reports' findings, not for the truth of those findings." *Id.* (citations omitted).

The facts relevant to this specific case, however, should themselves be the subject of expert testimony, which is why this motion is now being brought.

Local Rule 83.40 (Expenses) provides for court-appointed counsel to ask the Court for any funds necessary to pay an expert in excess of $2,000 – an amount which the undersigned has found will be woefully inadequate to cover the cost of an expert in this case given that the doctor who did the surgery (and thus ultimately resolved most of Mr. Barnes' problems) was himself asking to be paid a rate of $800 per hour.[2]

In the alternative, Federal Rule of Evidence 706 gives this Court the discretion both to appoint an expert when necessary and to apportion the costs for the expert when one side or the other is unable to pay. Mr. Barnes thus asks that this Court exercise its discretion to either grant him the funds necessary to retain an expert or, in the alternative, appoint an independent expert to review the same concerns.

Expert testimony is bound to prove necessary in this case for the jury to decide Mr. Barnes's Eighth Amendment deliberate indifference claims, which stem from Defendants' repeated denial and delay of medical treatment for Mr. Barnes's hemorrhoids – indeed, that statement, in and of itself, may demonstrate the importance of this request since so many see Mr. Barnes' complaints as common, familiar and likely to be treatable with Preparation H and a lot of patience.

The fact is, however, that Mr. Barnes' condition was so severe as to cause him excruciating pain and potentially life-threatening problems, his hemorrhoids being so bad that

---

[2] That doctor was gracious enough to later waive that request, making it possible for his deposition to proceed and be concluded without the need for any motion like this one. This is just one way in which the costs associated with this case have been kept to a minimum prior hereto.

they extended out of his body and had to be literally scooped back in whenever that happened. It was because of this condition that surgery was necessary, surgery he didn't get for a period of years, even after it was found to be necessary by his treating physician.

Mr. Barnes is indigent and is represented by Court appointed counsel, while the Defendants have more than sufficient resources to cover the costs of an expert. Mr. Barnes therefore seeks the assistance of this Court and requests that he be granted the relief sought by this motion.

## II. FACTUAL BACKGROUND

Mr. Barnes is an inmate at Hill Correctional Center ("Hill"). His medical care was and is provided by Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") through a contract with Hill and through its contract with the facility where Mr. Barnes was previously held, Stateville Correctional Center. Prior to his passing, Defendant SALEH OBAISI ("Dr. Obaisi") was a Wexford employee and the Stateville Medical Director. Defendant EVARISTO P. AGUINALDO JR. ("Dr. Aguinaldo") was a Wexford employee at Stateville during the same period.

*THE FOLLOWING STATEMENTS OF FACT ARE DRAWN FROM THE COMPLAINT (AS INDICATED) AND ARE LARGELY DISPUTED BY DEFENDANTS:*

As alleged in the complaint, Barnes has been in IDOC custody since 2007. Since 2013, Barnes has been in serious pain, suffering from a major anal fissure and severe hemorrhoids. For a period of years after this condition first started bothering him, the Defendant Physicians and/or other medical personnel working on their behalf, told Barnes there was nothing they could do and simply but constantly gave Barnes hemorrhoid cream to relieve some of the pain. Barnes

4

consistently made the Defendants aware that he was in serious pain, that each and everyday he was bleeding from the anal area, and that each tine he had bowel movements or just simply squatted, the hemorrhoids would fall out and he would have to push them back into his colon, increasing the possibility of further complications and pain.

 This was a persistent problem for Barnes for years after it first developed in 2013 and it only got worse over time. The Defendants refused to even examine Barnes for a long time, telling him that he was describing the symptoms for hemorrhoids and that there was nothing they could do for him other than to send him back to his cell with a prescription for hemorrhoid cream. He filed appropriate complaints and continued to ask for assistance but the Defendants continued to refuse to do anything for him until his family started complaining to Stateville, Wexford, and officials in Springfield.

 Then, in mid-2017, Barnes was finally sent to UIC for a medical examination. He received an MRI and the doctor there provided the Defendants with recommendations and instructions to "Please arrange for biofeedback therapy for outlet obstruction," even providing information regarding the route to be taken for that procedure to be arranged. The physician at UIC advised Barnes that he would need surgery but that, prior to surgery, that area of his body affected by the hemorrhoids would need to be properly prepared for the surgery. Completing biofeedback therapy was necessary for him to complete those preparations and he therefore could not get the surgery he needed until that therapy was completed. The Defendants were each aware of and appraised of these facts but continued to do nothing to address Mr. Barnes' worsening condition.

 Finally, after the District Court had entered orders commending Wexford and its

5

physicians to provide Barnes with the care he needed, orders Barnes showed to anyone who would read them, he was transferred to Hill Correctional in Galesburg and, soon thereafter, given the therapy he needed to proceed with the surgery. *See* Amended Complaint, ¶¶15-30.

### III. PROCEDURAL STATUS

In these proceedings, the parties have completed written discovery and a total of four depositions, including those of the plaintiff, Defendant Dr. Aguinaldo**,** Dr. Catalino Bautista (the physician at Hill who, after meeting with plaintiff, put in the referrals for his physical therapy and surgery), and Dr. Johan Nordenstam, the physician at UIC who first recommended and later conducted Mr. Barnes' surgery. The only discovery left to be completed, if any, would thus be the depositions of any experts who might be called upon to testify in this case.

In this context, it also bears noting that the undersigned court-appointed counsel is working *pro bono* (there are no contingency or other agreements for fees to be paid in this case, regardless of outcome) but has personally borne and is willing to waive any claim for reimbursement for a substantial number of costs incurred, including:

- The cost of service of process;

- The filing of an appearance in the probate proceedings of Defendant Dr. Saleh Obaisi;

- Repeated travel to meet with the client at Stateville Correctional Center during the first year of this case;

- Repeated overnight travel to meet with the client at Hill Correctional Center in Galesburg, Illinois since then;

- Witness fees; and

- The retention of a court reporter for three separate depositions.

The undersigned has thus made every effort to keep the costs of this litigation to a minimum, recognizing that the importance of retaining an expert witness could result in significant costs for which court assistance would be necessary.[3]

### IV. APPLICABLE STANDARD

Local Rule 83.40 (Expenses) provides:

"The party shall bear the cost of any expenses of the litigation or appeal to the extent reasonably feasible in light of the party's financial condition. Such expenses shall include, but not be limited to discovery expenses, subpoena and witness fees, and transcript expenses. It shall be permissible for appointed counsel or the firm with which counsel is affiliated to advance part or all of the payment of any such expenses without requiring that the party remain ultimately liable for such expenses, except out of the proceeds of any recovery. However, the attorney or firm shall not be required to advance the payment of such expenses. Expenses incurred by counsel appointed pursuant to LR83.36 or the firm with which counsel is affiliated may be reimbursed from the District Court Fund in accordance with the provisions of the Regulations Governing the Reimbursement of Expenses in Pro Bono Cases. The clerk will provide copies of the Regulations and the Plan for the Administration of the District Court Fund on request."

Rule 706, moreover, allows for the use of court-appointed experts. "Generally, if scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a fact in issue, a court will utilize expert witnesses." *Ledford v. Sullivan*, 105 F.3d 354, 358-59 (7th Cir. 1997) (*citing* Fed. R. Evid. 702). Federal Rule of Evidence 706 ("Rule 706") thus provides that, "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed ... ." Rule 706(a).

The compensation of an expert is payable "by the parties in the proportion and at the time that the court directs – and the compensation is then charged like other costs." Fed. R. Evid.

---

[3] To the extent such a waiver would facilitate the granting of the relief sought herein, the undersigned is prepared to waive reimbursement on the aforesaid costs. Notwithstanding the same, however, it bears reiterating that we cannot sustain offering such a waiver for the cost of obtaining copies of the transcripts from depositions in this case, as those costs would prove prohibitive.

706(c)(2). Rule 706 further "grants a district court the discretion to apportion all the costs of an expert to one side." *Ledford,* 105 F.3d at 360.

## V. DISCUSSION

A. **A Court-Appointed Expert is Necessary in this Case.**

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to the serious medical needs of a prisoner. *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008). To prevail on his Eighth Amendment Claim, Mr. Barnes must thus establish both that he suffered a serious illness (an objective element) and that the Defendants displayed deliberate indifference to his serious illness (a subjective element). *Ledford,* 105 F.3d at 359. A serious illness is a "condition carrying a risk of permanent impairment or extreme pain and suffering if left untreated." *Id.* While some medical symptoms may be within the understanding of a layperson, others may be sufficiently complex to require expert medical explanation. *See Greeno v. Daley,* 414 F.3d 645, 653 (7thCir. 2005) (requiring either physician's diagnosis or condition that is "obvious").

Cases alleging misdiagnoses and delays in treatment are complex. *See Ledford,* 105 F.3d at 360; *Greeno,* 414 F.3d at 658. In delayed treatment cases, in particular, courts generally require expert testimony because the question of whether a delay in treatment caused the plaintiff harm "requires an assessment of the adequacy of the treatment that [the plaintiff] did receive." *Greeno*, 414 F.3d at 658 (holding that a prisoner's claims involving delayed and inadequate treatment for an ulcer over a period of two years "will likely require expert testimony"). At the very least, a prisoner "must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams v. Liefer,* 491 F.3d 710, 715 (7th

8

Cir. 2007).

In this matter, Mr. Barnes alleges that he was seen by the defendants on numerous occasions and that the defendants were deliberately indifferent to his medical needs. This conduct delayed Mr. Barnes's receipt of proper care, exacerbating his condition and causing him increased pain and suffering until he finally received the necessary surgery at UIC. This pattern of misdiagnoses and delayed treatment presents the type of complex medical record where a jury is likely to need expert evidence to assess the adequacy of Mr. Barnes's medical care. *See Greeno,* 414 F.3d at 658 (question of assessing adequacy of treatment is complicated and likely requires expert testimony). The doctors responsible for Mr. Barnes's medical care are named defendants, and their testimony would thus be inherently biased.

Absent Mr. Barnes being able to retain an expert who would at least offer a countervailing opinion to those of the defendants themselves, therefore, an expert should be appointed by this Court to assist in establishing what proof is necessary to evaluate whether the objective criteria for an Eighth Amendment Claim has been satisfied in this case – explaining to the jury the seriousness of Mr. Barnes's illness and the harm resulting from Defendants' pattern of delay and refusal to provide appropriate care.

In *Norwood v. Zhang*, 2013 U.S. Dist. LEXIS 131439, *2-3, 92 Fed. R. Evid. Serv. (Callaghan) 520, 2013 WL 5162202 (N.D. Ill. 2013), the plaintiff alleged "that the defendant physicians [including Wexford] were deliberately indifferent to his serious medical condition, and that as a result of their alleged mistreatment — including failing to make a timely referral to an ophthalmologist outside the prison — he endured increased pain and suffering and developed substantial corneal scarring...."

9

Similarly, in this case, Mr. Barnes claims that the defendants were deliberately indifferent and that, as a result of their mistreatment (including their failure to make a timely referral for the physical therapy he needed to prepare for surgery), he endured extensive bleeding, pain and suffering. *See* First Amended Complaint, Docket no. 18. As in *Norwood*, it thus bears emphasizing, an expert is necessary to evaluate and confirm the veracity of these claims:

> "The subjective component of proving deliberate indifference requires evidence that the defendants were aware of a substantial risk to [the plaintiff's] health posed by his symptoms and history..., and disregarded that risk by failing to provide him with adequate medical care and treatment.... Beyond demonstrating that the seriousness of his condition and the need for treatment were obvious, [plaintiff] will also need to show that the defendants subjectively and recklessly disregarded the risk it posed to his health by providing him with substandard care for the condition. *See, e.g., Johnson*, 433 F.3d at 1013 (holding that 'it is not enough to show . . . that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent...'). While [plaintiff] did receive care from the defendants on multiple occasions for his complaints, that treatment 'does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate a medical condition.' Edwards, 478 F.3d at 831. A plaintiff can establish that defendants were deliberately indifferent if they failed to act, or if they took 'woefully inadequate action.' *Reed,* 178 F.3d at 854, *citing Hudson v. McHugh,* 148 F.3d 859, 863 (7th Cir.1998). A neutral expert appointed under Rule 706 would be able to discuss the professional standards related to [plaintiff's condition] and opine whether the defendants' care for [him] departs far enough from the standard of care to qualify as deliberately indifferent to the risk of harm presented by his medical condition." *Norwood v. Zhang,* 2013 U.S. Dist. LEXIS 131439, *12-15, 92 Fed. R. Evid. Serv. (Callaghan) 520, 2013 WL 5162202 (N.D. Ill. 2013).

This Court should thus hold, as the Magistrate Judge held in *Norwood*, that an expert should be appointed in this case. *See also Kelly v. Talbit*, 2017 U.S. Dist. LEXIS 8534 *3 (S.D.Ind. 2017) ("A neutral expert appointed under Rule 706 would be able to discuss the professional standards related to [plaintiff's] conditions and opine whether the defendants' care

10

for him departs far enough from the standard of care to qualify as deliberately indifferent to the risk of harm presented by his medical condition").

**B.      Barnes Requests, in the Alternative, That This Court Appoint an Expert to Review the Relevant Facts and Provide an Opinion.**

Mr. Barnes' first request would be that he be granted the funds necessary to retain an expert witness who could testify on his behalf, in consultation with his counsel, pursuant to Local Rule 83.40. In the alternative, Mr. Barnes asks that this Court appoint an expert of its own pursuant to Federal Rule of Evidence 706, with the cost of that expert to be sustained by the Court.

In *Ledford v. Sullivan,* 105 F.3d 354 (7th Cir. 1997), a case which also involved claims of deliberate indifference in the medical treatment of a prisoner, the Seventh Circuit determined that, had appointment of a medical expert been necessary, Rule 706 granted the district court "the discretion to apportion all the costs to one side." *Ledford,* 105 F.3d at 360-61. The Seventh Circuit also "caution[ed] against reading [the rule] in such a narrow fashion that the rule would allow for court-appointed experts only when both sides are able to pay their respective shares. Read in such a restrictive way, [the rule] would hinder a district court from appointing an expert witness whenever one of the parties is indigent, even when that expert's testimony would substantially aid the court." *Id.* at 361. Mr. Barnes is indigent. The Court, recognizing his need for such assistance and that there may be some merit to his claim, granted his motion to appoint counsel (Docket no. 9). He has been incarcerated since he was 19 years of age and he cannot afford to pay all, or even any substantial part of the cost of an expert's time.

Mr. Barnes thus requests that this Court either grant him a budget sufficient to ensure he

can pay an expert witness to testify to the matters at issue herein or, in the alternative, approve a procedure for the naming and payment of a court-appointed expert.

In *Kelly v. Talbit,* 2017 U.S. Dist. LEXIS 8534, *3-4 (S.D. Ind. 2017), the Court ordered the following procedure be undertaken:

> "A. The expert(s) should be selected as follows: (1) each party should submit to the other by a date certain a list of three potential experts who are qualified and willing to opine on the matters at issue in this case; (2) within 14 days of exchanging lists, the parties should confer to determine if they can agree to one of the six potential experts; (3) during that conference, if the parties cannot agree on an expert, each party can strike two of the experts on the other party's list, leaving two potential experts, one from each list; (4) the remaining two experts will be submitted to the Court for consideration and the Court shall determine which of the two should be appointed.
>
> "B. The parties shall confer and attempt to reach an agreement regarding the scope of the inquiry to be conducted by the Rule 706 expert and will file a Notice containing the proposed scope by a date certain. If they cannot reach an agreement regarding the scope of the inquiry, they shall file a motion asking the Court to determine the appropriate scope.
>
> "C. Once the expert has rendered an opinion, that opinion shall be filed with the Court."

In *Kelly*, the Court also approved a budget of $15,000, with the Court to cover the first $7,500 and the parties to share in the costs thereafter. While there are arguably some reasons to follow such a procedure in this case (such an expert would, after all, be chosen through a procedure both sides participate in and would thus mitigate against the need for either side to retain an expert of their own), there are some differences between the two cases[4] and Barnes means to keep the cost of retaining an expert down below $7,500 if at all reasonably possible.

---

[4] For one thing, the plaintiff in *Kelly* anticipated future medical needs which plaintiff here is at least hopeful will not be necessary and there will thus be no need for testimony about future medical costs, something necessarily germane to Wexford in *Kelly* but not here.

## V. CONCLUSION

Plaintiff LEON BARNES JR. ("Mr. Barnes"), by his undersigned counsel and pursuant to Local Rule 83.40 and/or Federal Rule of Evidence 706, respectfully requests that this Court grant him a budget of up to $7,500 with which to pay a retained expert pursuant to D.C.F. REG.3(A) or, in the alternative, appoint an expert witness to assist the jury in understanding the scientific and medical evidence in this case with the costs to be paid by the Court (up to said amount of $7,500).

In the event this Court elects to appoint an independent expert, Mr. Barnes requests that the procedure adopted by the Court in *Kelly v. Talbit,* 2017 U.S. Dist. LEXIS 8534, *3-4 (S.D. Ind. 2017) be used in this case and that any such expert be directed to testify on the following topics relevant to the claims in this case:

(a) Whether Defendants incorrectly prescribed or failed to prescribe treatments for Mr. Barnes such that they failed to provide him with the physical therapy necessary to prepare him for surgery and/or failed to otherwise prepare him for the surgery itself in a timely manner;

(b) Whether Defendants' failure to refer Mr. Barnes to a physical therapist or for the prescribed surgery in a reasonably timely fashion, as aforesaid, constituted deliberate indifference;

(c) Whether the injuries to Mr. Barnes, and/or the pain and suffering he incurred proximately resulted from Defendants' failure to provide treatment; and

(d) Whether Defendants' treatment of Mr. Barnes exacerbated his condition and caused damage resulting in a need for additional medical treatment or long-term physical damage, pain and suffering.

Mr. Barnes further requests that he be granted such additional relief as the Court deems just and proper or to which he is otherwise entitled as a matter of law.

        Respectfully submitted,

        LEON BARNES,

        By:   /s/ Ted A. Donner
                One of His Attorneys

Ted A. Donner
DONNER & COMPANY LAW OFFICES LLC
1125 Wheaton Oaks Court
Wheaton, Illinois 60187
(630) 588-1131
tdonner@donnerco.com