UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEON BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-8959 |
| | ) | |
| v. | ) | |
| | ) | Judge Franklin U. Valderrama |
| WEXFORD HEALTH SORUCES, INC., | ) | Magistrate Judge Susan E. Cox |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons discussed below, Plaintiff's Motion for Costs to Pay for the Appointment of a Medical Expert [Dkt. 73] is denied. The parties are ordered to file an updated joint status report on 8/6/2021 proposing a schedule for any expert discovery the parties plan to take and informing the Court whether they would like to schedule a settlement conference.

**I.    Background**

Plaintiff Leon Barnes has suffered from severe hemorrhoids since 2013. According to Plaintiff, his hemorrhoids are so severe that they require him to manually push them back into his anal canal any time he defecates or squats. [Dkt. 73 at 4.] Plaintiff alleges he complained to Stateville Correctional Center ("Stateville") staff that his hemorrhoids were worsening,[1] but Defendants refused to provide any care or examination beyond dispensing hemorrhoid cream. [Dkt. 73 at 4.] On June 19, 2017, Plaintiff was seen by Johan Dr. Nordenstam at University of Illinois at Chicago ("UIC") Hospital, who noted a prolapse of internal hemorrhoids, but no "external" findings at the resting phase. [Dkt. 81 at 5.] Dr. Nordenstam recommended MR Defecography (MRD).[2] [Dkt. 81 at 4-5.] The MRD was conducted on September 15, 2017, and

---

[1]    Plaintiff was housed at Stateville from April 6, 2016, until July 25, 2018. [Dkt. 81 at 4.]

[2]    MRD is a diagnostic test that uses magnetic resonance imaging at different stages of the defecation process.

1

Plaintiff was diagnosed with prolapsing internal hemorrhoids, but no rectal prolapse. [Dkt. 81 at 5.] On September 25, 2017, Plaintiff followed up with Dr. Nordenstam complaining of throbbing pain during and after bowel movements. [Dkt. 81 at 6.] Dr. Nordenstam recommended "biofeedback with [physical therapy]" and, depending on the results, hemorrhoidectomy (hemorrhoid surgery). [Dkt. 81 at 6.] Dr. Nordenstam explained that "Plaintiff did not relax his pelvic floor when he had a bowel movement, and that made him push a lot," which caused Plaintiff's hemorrhoids to get bigger and slide out of his anal canal. [Dkt. 81 at 6.] Although Dr. Nordenstam could perform the hemorrhoidectomy without the prescribed physical therapy, "if [Plaintiff] gets hemorrhoids because he's pushing too much, he will just get them right back." [Dkt. 81, Ex. C. Nordenstam Dep. at 11:23-12:14]. In other words, the physical therapy would improve Plaintiff's prognosis for long term success after the surgery.

Plaintiff alleges that Defendants knew of Dr. Nordenstam's diagnosis and recommendation, but did nothing to treat Plaintiff's condition. Defendants contend they attempted to make the referral for Plaintiff, but "UIC did not accept inmates for Pelvic Floor Physical Therapy, and personnel at Stateville had to find an alternate location for Plaintiff to receive this specialized care." [Dkt. 81 at 7.] Regardless, Plaintiff never received the biofeedback physical therapy while housed at Stateville. On July 25, 2018, Plaintiff was transferred to Hill Correctional Center, and was referred out for pelvic floor physical therapy beginning on September 11, 2018. [Dkt. 81 at 8.] Dr. Nordenstam performed a successful hemorrhoidectomy on Plaintiff on April 16, 2019. [Dkt. 81 at 8.]

Plaintiff filed the instant suit alleging that Defendants' deliberate indifference to his serious medical needs violated 42 U.S.C. § 1983. Plaintiff's Motion for Attorney Representation was granted on March 2, 2018, and counsel began to represent Plaintiff *pro bono* in accordance with his trial bar obligations pursuant to Local Rule 83.11(h) and 83.37. [Dkt. 9.] At the conclusion of

fact discovery, Plaintiff filed the instant motion petitioning the Court to provide counsel $7,500.00 to pay Dr. Nordenstam for an expert report and expert testimony in this matter. Plaintiff asserts Dr. Nordenstam's expert opinion is necessary for his case: a) because jurors will not understand that hemorrhoids qualify as a serious medical need without expert testimony [Dkt. 73 at 3]; and b) "to confirm that providing the necessary treatment to a patient like Barnes would have been relatively easy, simple and conventional." [Dkt. 90 at 10.] For the reasons discussed below, the Court does not believe prepaying Plaintiff's counsel for an expert report is an appropriate use of the District Court Fund and denies Plaintiff's motion for costs.

## II.     Analysis

Local Rule 83.40 provides "[c]ounsel recruited pursuant to LR 83.36 may obtain prepayment or reimbursement of expenses from the District Court Fund in accordance with the provisions of the Regulations Governing the Prepayment and Reimbursement of Expenses in *Pro Bono* Cases."[3] The Regulations Governing the Prepayment and Reimbursement of Expenses in *Pro Bono* Cases (the "Regulations") set forth the procedure for an assigned attorney to receive prepayments or reimbursements for expenses "incurred in the preparation and presentation of the proceeding as set forth in these regulations." D.C.F. Reg.1.[4] Expert costs are eligible for prepayment; however, "[p]rior to exceeding costs of $2,000.00 for expert services, the assigned attorney must seek the approval of the judge to whom the case is assigned." D.C.F. Reg.4.G. Counsel may seek over $5,000.00 "[i]f the assignment involves difficult or complex matters" by petitioning the Executive Committee of the District Court for additional expenses. D.C.F. Reg.3.G.

---

[3] Plaintiff's motion originally sought prepayment for expert costs pursuant to L.R. 83.40 or appointment of an expert pursuant to Federal Rule of Evidence 706. [Dkt. 73 at 1.] Because Plaintiff withdrew his requests pursuant to FRE 706, the Court only analyzes the request made pursuant to L.R. 83.40. [Dkt. 90 at n.2.]

[4] The District Court Fund, Regulations Governing the Prepayment and Reimbursement of Expenses in *Pro Bono* Cases, https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_legal/NewRules/dcf_e.pdf (last visited July 15, 2021).

To do so, "the assigned attorney must first submit a written request to the assigned judge seeking preapproval and documenting the need for additional reimbursement." *Id.* "The assigned judge, the Chief District Judge, or the Executive Committee may refuse to permit prepayment or disallow reimbursement of any expense based upon the absence of documentation that such expense is appropriate or reasonable…." *Id.* Neither the Local Rules nor the Regulations define "appropriate," "reasonable," or "difficult and complex matters;" as such, it is left to the sound discretion of the Court to make those determinations.

The Court does not believe Plaintiff has shown that authorizing a $7,500.00 prepayment to Plaintiff's counsel for Dr. Nordenstam's expert report and testimony is appropriate or reasonable, nor does it find that this a difficult or complex matter. Contrary to Plaintiff's assertion, the Court expects a reasonable juror could understand the severity of Plaintiff's medical condition without expert testimony. The Court does not believe understanding the seriousness of prolapsed hemorrhoids qualifies as a difficult or complex matter, which is a prerequisite for prepayments over $5,000.00 such as Plaintiff seeks here. Moreover, Plaintiff is not forced to choose between paying Dr. Nordenstam $7,500.00 or having no testimony from him at all; to the extent Plaintiff needs Dr. Nordenstam's testimony to explain the seriousness of his condition, Plaintiff does not need him to render an expert opinion to do so. Dr. Nordenstam is Plaintiff's treating surgeon and can testify pursuant to a trial subpoena regarding the severity of Plaintiff's hemorrhoids without rendering expert testimony. As such, Plaintiff has not documented that paying $7,500.00 from the District Court Fund for Dr. Nordenstam's expert opinion to prove Plaintiff suffers from a serious medical condition is appropriate.

The Court likewise rejects Plaintiff's second argument that Dr. Nordenstam's opinion is vital "to confirm that providing the necessary treatment to a patient like Barnes would have been relatively easy, simple and conventional." [Dkt. 90 at 10]. The simplicity and availability of pelvic

4

floor physical therapy is a fact question and does not require expert testimony. Plaintiff can prove this issue at trial by questioning employees from Stateville and Hill Correctional Center, who have knowledge about the relative ease of providing pelvic floor physical therapy to inmates like Plaintiff. Alternatively, with the proper foundation, Dr. Nordenstam can testify as a fact witness and treating physician that pelvic floor physical therapy is "relatively easy, simple and conventional" to provide to Plaintiff. [Dkt. 90 at 10.] Plaintiff has not shown that Dr. Nordenstam's opinion is necessary to establish that pelvic floor physical therapy was conventional and available, and, therefore, has failed to document that a $7,500.00 prepayment from the District Court fund is appropriate for that use.[5]

Although Plaintiff does not fully articulate the argument, he appears to contend Dr. Nordenstam's opinion is required to prove that the alleged delay in treatment exacerbated his symptoms. Plaintiff quotes *Petties v. Carter*, 836 F.3d 722, 730-731 (7th Cir. 2016), which states: "[t]o show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." First, the requirement articulated in *Petties* is disjunctive; Plaintiff need not provide evidence of exacerbation if he can prove the delay unnecessarily prolonged his pain. Plaintiff himself can supply the testimony on that issue by explaining to the jury the pain he endured between Dr. Nordenstam's initial recommendation for pelvic floor physical therapy and the commencement of the therapy. Second, assuming it were necessary, Dr. Nordenstam is capable of providing testimony regarding exacerbation as a fact witness testifying pursuant to a trial subpoena. Dr. Nordenstam saw Plaintiff in 2017 when he first recommended the physical therapy and examined Plaintiff prior to performing surgery in 2019. Consequently, Dr. Nordenstam has

---

[5] The Court notes that counsel listed many other costs he has incurred in his representation, but for which he has not sought reimbursement. [Dkt. 73 at 6.] This opinion does not reach the appropriateness of those costs, and counsel is free to petition the Court for reimbursement for any other eligible costs at a later date.

personal knowledge of any deterioration in Plaintiff's condition in the intervening time and can testify to the precise ways in which the two-year delay exacerbated Plaintiff's hemorrhoids. Thus, Dr. Nordenstam's opinion is not necessary to prove Plaintiff's case, and the funds Plaintiff seeks are not appropriate.

### III. Conclusion

Plaintiff's Motion for Costs to Pay for the Appointment of a Medical Expert [Dkt. 73] is denied. The parties are ordered to file an updated joint status report on 8/6/2021 proposing a schedule for any expert discovery the parties plan to take and informing the Court whether they would like to schedule a settlement conference.

Entered: 7/21/2021

U.S. Magistrate Judge, Susan E. Cox