IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEON BARNES,

              Plaintiff,

      v.

WEXFORD HEALTH SOURCES, INC.,
EVARISTO P. AGUINALDO, Jr., ESTATE
OF SALEH OBAISI,

         Defendants.

No. 17-cv-8959
Judge Franklin U. Valderrama

## ORDER

Plaintiff Leon Barnes (Barnes), an individual in custody of the Illinois Department of Corrections (IDOC) suffering from hemorrhoids, brings this suit under 28 U.S.C. § 1983 against Defendants, Ghaliah Obaisi, as Independent Executor of the Estate of Saleh Obaisi, M.D., deceased (Dr. Obaisi), Evaristo Aguinaldo, M.D. (Dr. Aguinaldo), and Wexford Health Sources, Inc. (Wexford) (collectively, Defendants), alleging that Defendants violated his Eighth Amendment rights by their deliberate indifference to his serious medical condition. R. 18, First Amended Complaint (FAC).[1]

Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. R. 113, MSJ. For the reasons that follow, the Court grants summary judgment in favor of Defendants and against Barnes.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

The following undisputed facts[2] are set forth as favorably to Barnes, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the Court assumes the truth of those facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).[3]

Leon Barnes, at all times relevant was an individual in the custody of the Illinois Department of Corrections (IDOC). Pl.'s Resp. DSOF ¶ 1.[4] Barnes was housed at Stateville Correctional Center (Stateville) from April 6, 2016, to July 25, 2018, and was later transferred to Hill Correctional Center (Hill). *Id.* ¶ 2. Wexford is a private corporation that has contracted with the State of Illinois to provide certain medical treatment to individuals in custody of IDOC. *Id.* ¶ 4. Dr. Aguinaldo is a medical doctor and at all times relevant was employed as an onsite physician at Stateville. *Id.* ¶ 5.

---

[2]Where there is a dispute of facts, the Court notes the dispute.

[3]On August 23, 2022, Barnes moved for leave to file a sur-response because Defendants, in their reply brief, appeared to move the Court to strike various portions of Barnes' filings. R. 139. On August 24, 2022, the Court denied the motion, ordering that "[t]o the extent that Defendants have asked the Court to grant affirmative relief in their reply brief (separate and beyond the request for summary judgment), the Court will not entertain such requests in a reply brief." R. 140. The Court accordingly granted Defendants leave to file a motion for affirmative relief by 09/01/2022. *Id.* No such motion was filed, so the Court declines to strike Barnes' Statement of Additional Facts. That said, the Court will still consider Defendants' objections in conjunction with Local Rule 56.1 and Federal Rule of Civil Procedure 56.

[4]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for Defendants' Statement of Undisputed Facts (R. 115); "Pl.'s Resp. DSOF" for Barnes' Response to Defendants' Statement of Undisputed Facts (R. 122); "PSOAF" for Barnes' Statement of Additional Facts (R. 123).

Dr. Obaisi, was a medical doctor, and was employed as a Site Medical Director at Stateville until his passing in December of 2017. *Id* ¶ 7; PSOAF ¶ 6.

## I.     Wexford's Policies and Practices

Wexford is a party to an agreement with IDOC, which provides, among other things, that Wexford would provide the medical, dental, vision, pharmaceutical and mental health services for prisoners at specific state correctional centers. PSOAF ¶ 1. Wexford is to arrange and provide for services on-site and as necessary off-site at local hospitals, outpatient facilities and consultative physician offices. *Id.* Wexford makes decisions about off-site care (such as referrals) to the University of Illinois, Chicago (UIC) through a process known as collegial review. PSOAF ¶ 5.[5] Collegial review takes place during a scheduled conference call between Wexford's corporate director of utilization management and Stateville's medical director. *Id.* During the conference call, the Stateville representative would seek approval to have an inmate referred for an off-site procedure. *Id.* A proposed off-site referral will be considered during collegial review only if an on-site Stateville provider requests it. *Id.* Wexford's on-site medical staff members will review, integrate, and generally refer to the outside specialist's recommendation. *Id.*

---

[5]In support of PSAOF ¶ 5, Barnes cites to a district court opinion discussing collegial review, *Sterling v. Wexford Health Sources, Inc.*, 2021 WL 5906067, at *11 (N.D. Ill. Dec. 13, 2021). The Court assumes, for purposes of background, that such an opinion would be admissible at trial. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 & n.2 (7th Cir. 1994) (the evidence offered at summary judgment must only "be a kind admissible at trial," that is, it need not be in the precise form that it would be offered); *see also Taylor v. Dart*, 2022 WL 4483908, at *2 (N.D. Ill. Sept. 27, 2022). In any event, for the reasons discussed below, Barnes fails to overcome summary judgment on his *Monell* claim concerning collegial review.

## II.    Hemorrhoids and Treatment

Hemorrhoids are a normal part of human anatomy and sit inside the anal canal. Pl.'s Resp. DSOF ¶ 33. Hemorrhoids are classified into four grades: one, two, three, and four. *Id.* ¶ 34. Grade four is the most severe, in which hemorrhoids have prolapsed and are stuck on the outside of the rectum and do not go back in. *Id.* Grade three involves hemorrhoids that have prolapsed but can be pushed back in the rectum. *Id.* Grade two are hemorrhoids that prolapse when a person strains and goes back inside the rectum on its own after the straining stops. *Id.* Grade one is bleeding hemorrhoids that can be seen *Id.* A person can reduce pain associated with hemorrhoids by not sitting on the commode too long, taking fiber supplements or at least consuming fiber, and drinking lots of fluids. *Id.* ¶ 35.[6] Some hemorrhoids can be managed with diets, frequency of bowel movements, and pain medications-such as creams. *Id.* If a patient has hemorrhoids, some symptoms that a person can experience are bleeding, prolapse of the hemorrhoids, and thrombosis. *Id.* ¶ 36.

A person presenting to a doctor with prolapsed hemorrhoids is relatively common. Pl.'s Resp. DSOF ¶ 36. When hemorrhoids prolapse, any internal hemorrhoid will bulge outside the person's rectum. *Id.* ¶ 38. In these circumstances,

---

[6] In Barnes' Responses to DSOF ¶¶ 35–41, Barnes generally disputes these facts to the extent that Dr. Nordenstam's statements apply to every case involving hemorrhoids and treatment. He also insists that the details regarding biofeedback therapy may be oversimplified or mischaracterized. Pl.'s Resp. DSOF ¶¶ 35–41. But merely asserting, without citation to the record, that a fact is misleading or oversimplified does not comply with Local Rule 56.1. Responses to statements of fact should not include argument; argument belongs in the memorandum of law in support or opposition of summary judgment. *See Williams v. Wexford Health Sources, Inc.*, 2022 WL 4132443, at *4 (N.D. Ill. Sept. 12, 2022). The Court therefore deems these facts admitted.

4

surgery is considered. *Id.* Physical therapy is designed for a person to acquire relaxation techniques so he or she can have an optimal way of having a bowel movement. *Id.* ¶ 39. It also seeks to prevent a recurrence of hemorrhoids after surgery. *Id.* Pelvic floor/biofeedback is a specialized form of therapy. *Id.* A doctor can recommend a person for biofeedback therapy if that person has issues relaxing or tightening the muscles of the pelvic floor. *Id.* ¶ 40. Put another way, if a person is pushing too much during bowel movements, it can cause hemorrhoids. *Id.* Once a patient can control the patient's pelvic floor muscles, the hemorrhoids can be taken out via surgery. *Id.* A common surgery is a hemorrhoidectomy where a surgeon removes the tissue that slides in and out of the anal canal. *Id.* ¶ 41.

## III.   Barnes' Interactions with Dr. Obaisi and Dr. Aguinaldo

Barnes alleges to have first experienced hemorrhoids in late 2013. DSOF ¶ 8.[7] On May 12, 2014, Barnes was seen for complaints of pain and bleeding during bowel movements. Pl.'s Resp. DSOF ¶ 9. Barnes was prescribed fiber pills and hemorrhoid cream. *Id.* On July 23, 2016, Barnes was seen by a nurse and complained about hemorrhoid pain and was ultimately referred to a doctor. *Id.* ¶ 10.

On or about July 29, 2016, Barnes was seen by Dr. Aguinaldo complaining of hemorrhoids. Pl.'s Resp. DSOF ¶ 13. Approximately two months later, on September

---

[7]In Barnes' Response to DSOF ¶ 8, Plaintiff states: "[i]t is admitted that Mr. Barnes first reported experience with severe hemorrhoidal problems in late 2013." Pl.'s Resp. DSOF ¶ 8. However, Plaintiff fails to cite to the record, so this response is invalid pursuant to Local Rule 56.1, and the Court deems DSOF ¶ 8 admitted. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (explaining that each response, and each asserted fact must be supported with a specific reference to the record).

26, 2016, Dr. Obaisi saw Barnes and prescribed Fiberlax. *Id.* ¶ 14.[8] On January 10, 2017, Barnes was seen by Dr. Obaisi for complaints of rectal bleeding and pain with bowel movements. *Id.* ¶ 15. Dr. Obaisi referred Barnes to collegial review for an evaluation of colorectal anal fissure and bleeding. *Id.* Wexford approved the collegial review on January 18, 2017. *Id.*

On June 19, 2017, Barnes was sent out on a medical furlough to UIC. Pl.'s Resp. DSOF ¶ 16. There, Barnes saw Dr. Johan Nordenstam (Dr. Nordenstam), a colorectal surgeon and professor of surgery, who noted a prolapse of internal hemorrhoids. *Id.* ¶ 17. Barnes was subsequently scheduled for an MR Defecography (MRD) and prescribed Metamucil. *Id.* On June 27, 2017, Dr. Obaisi submitted a request for collegial review for Barnes to receive an MRD pursuant to Dr. Nordenstam's request. *Id.* ¶ 18. Dr. Obaisi's submission was approved by Wexford the same day. *Id.* On September 15, 2017, Barnes was sent out on medical furlough to UIC to undergo the MRD procedure. *Id.* ¶ 19.[9] The results of the MRD indicated that Barnes had mild to moderate rectal distention on evacuation. *Id.* ¶ 20. The

---

[8]In Barnes' Responses to DSOF ¶¶ 14–15, Barnes admits that he saw Dr. Obaisi on September 26, 2017, and January 10, 2017, but denies "[D]efendants characterization of the notes" appearing on the medical records. The Court finds that these responses to Defendants' statement of material facts do not comply with Local Rule 56.1. Responses to statements of facts should not include argument; argument belongs in the memorandum of law in support or opposition of summary judgment. *See Williams*, 2022 WL 4132443, at *4. Moreover, "[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 714 (N.D. Ill. 2016). The Court accordingly deems these facts admitted as well.

[9]A defecography is a radiological examination that looks at what happens to the pelvic floor when someone has a bowel movement. Pl.'s Resp. DSOF ¶ 19.

diagnosis was prolapsing internal hemorrhoids, no rectal prolapse. *Id.* Barnes had straining with bowel movements, which made the hemorrhoids prolapse worse. *Id.*

On September 25, 2017, Barnes was sent out on medical furlough to UIC for a follow-up appointment with Dr. Nordenstam. Pl.'s Resp. DSOF ¶ 21. Dr. Nordenstam recommended pelvic floor/biofeedback therapy. *Id.* Dr. Nordenstam did not want to do surgery before Barnes' therapy because he believed it would not be a long-term solution if Barnes was not having proper bowel movements. *Id.* ¶ 22. Dr. Nordenstam did not place a timeline as to when Barnes should undergo the surgery. *Id.*

According to Barnes, on one occasion when he returned from the hospital, he asked Dr. Obaisi what the doctors were going to do about Dr. Nordenstam's recommendation for physical therapy. PSOAF ¶ 31. Barnes testified that Dr. Obaisi said that Dr. Obaisi had to look into it. *Id.* Barnes responded, "well right there on the paper, the doctor says what to do." *Id.* And Dr. Obaisi replied, according to Barnes, that "[t]his is only a doctor's recommendation. It doesn't mean I have to do this. This is his opinion. I will let you know what I'm going to do." *Id.*

The day after Barnes' follow-up appointment with Dr. Nordenstam, on September 26, 2017, Dr. Obaisi signed a form titled "Illinois Department of Corrections Medical Special Services Referral and Report" which listed "Rectal biofeedback Training at UIC Colorectal clinic Dr. Nordenstam." *See* Pl.'s Resp. DSOF

¶ 23; R. 115-2, DSOF Exh. B at 18.[10] Wexford approved the request on October 3, 2017. *See* Pl.'s Resp. DSOF ¶ 23; R. 115-2; DSOF Exh. B at 19.

The next event is disputed between the parties. According to Defendants, UIC would not accept Barnes for pelvic/biofeedback physical therapy. DSOF ¶ 24; R. 115-2; DSOF Exh. B at 104. Barnes, however, asserts that UIC provides biofeedback therapy and if Wexford had asked Dr. Nordenstam for a referral then he could have provided several alternatives. *See* Pl.'s Resp. DSOF ¶ 24; PSOAF ¶ 38.

Approximately one month later, Barnes was seen by Dr. Aguinaldo on October 19, 2017, for complaints of strep throat, cold, cough, and stuffy nose. DSOF ¶ 25.[11] During this visit, Dr. Aguinaldo noted Barnes was not in distress, but had a congested nose and throat. *Id.* He diagnosed Barnes with an upper respiratory tract infection. *Id.* Dr. Aguinaldo prescribed Barnes with 500mg of Amoxicillin three times

---

[10]In Barnes' Response to DSOF ¶ 23, Barnes states: "[i]t is admitted that, on or about September 26, 2017, in the referenced document, Obaisi acknowledged that 'symptoms are worse. He did not get biofeedback. He needs to see UIC pelvic floor PT' and said that he 'will notify Barb Johnson (liaison) to get this set up.' *Id.* No collegial review is referenced in this document and Barnes therefore denies that the same was being addressed herein." Pl.'s Resp. DSOF ¶ 23. The Court finds that these responses to Defendants' statement of material facts do not comply with Local Rule 56.1. Responses to statements of facts should not include argument; argument belongs in the memorandum of law in support or opposition of summary judgment. *See Williams*, 2022 WL 4132443, at *4. Furthermore, Barnes' dispute of fact misstates the medical record and fails to cite to any opposing documents in the record with an appropriate citation to dispute this fact. Defendants' fact is consequently deemed admitted.

[11]In Barnes' Response to DSOF ¶ 25, Barnes admitted that Dr. Aguinaldo made statements in his notes reflecting the March 6, 2018, treatment, but he disputes this treatment occurred because Dr. Aguinaldo testified that he had no memory of treating Barnes. Pl.'s Resp. DSOF ¶ 25. The Court finds this response to Defendants' statement of material facts does not comply with Local Rule 56.1 because it is an argumentative assertion. *See Williams*, 2022 WL 4132443, at *4. Moreover, Barnes' dispute misstates the medical records and deposition testimony, and his denials are ultimately unsupported by the record. Thus, the Court deems DSOF ¶¶ 25–26 admitted.

a day for 10 days and a spoonful of Robitussin three times a day for 10 days. *Id.* He also advised Barnes to follow up as needed. *Id.*

On March 6, 2018, Barnes was seen by Dr. Aguinaldo for follow-up on renewing a shower permit. DSOF ¶ 26. Dr. Aguinaldo noted Barnes' history of rectal obstruction and that Barnes was previously seen at UIC in September 2017. *Id.* Dr. Aguinaldo renewed his shower permit and issued Barnes an ice permit. *Id.* In April 2018, Dr. Okezie issued another request to collegial review for pelvic floor therapy for Barnes at UIC. Pl.'s Resp. DSOF ¶ 27. Again, there is a dispute between the parties if UIC would accept Barnes for the requested therapy. DSOF ¶ 24; R. 115-2; DSOF Exh. B at 104; PSOAF ¶ 38.

On August 14, 2018, after Barnes was transferred to Hill Correctional Center, Dr. Bautista, a traveling medical director, requested another collegial review—which was approved by Wexford— for pelvic floor therapy. Pl.'s Resp. DSOF ¶ 28. On September 11, 2018, Barnes was sent out on a medical furlough to Cottage Rehabilitation and Sports Medicine (Cottage) to begin pelvic floor therapy. *Id.* ¶ 29. Barnes completed pelvic floor therapy at Cottage on October 23, 2018. *Id.* On March 25, 2019, Barnes was seen by Dr. Matthew at UIC, who recommended Barnes undergo a hemorrhoidectomy. *Id.* ¶ 31. Wexford approved the surgery on April 4, 2019, and Barnes underwent the hemorrhoidectomy on April 16, 2019. *Id.*

Barnes filed suit against Defendants, R. 1, and subsequently filed an amended complaint. FAC. The FAC asserts a *Monell* claim against Wexford (Count I); deliberate indifference claims against Dr. Obaisi and Dr. Aguinaldo (Counts II and

III) and a claim for injunctive relief against Wexford (Count IV).[12] All discovery closed as of September 27, 2021, and Defendants filed the motion for summary judgment presently before the Court. MSJ.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

---

[12]Barnes has withdrawn his claim for injunctive relief (Count IV) because he underwent the hemorrhoidectomy.

Local Rule 56.1 requires the moving party to file a statement of facts that demonstrates its entitlement to judgment as a matter of law. *Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014). The nonmoving party then must file a response to that statement. *Id*; N.D. Ill. Loc. R. 56. 1(b)(2). "Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." N.D. Ill. Loc. R. 56.1(e)(2). Further, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." N.D. Ill. Loc. R. 56.1 (e)(3). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The nonmoving party may provide a separate statement of additional facts. *Petty*, 754 F.3d at 420; N.D. Ill. Loc. R. 56. 1(b)(3). "The nonmovant's statement of additional facts must be supported by specific references to the record, and must be limited to materials facts—that is, facts that are relevant to the outcome of the issues presented by the movant's summary judgment motion." *Boyd*, 225 F. Supp. 3d at 716. Moreover, neither party's statement of facts should contain legal argument. N.D. Ill. Loc. R. 56.1(d)(4).

District courts have discretion to enforce strict compliance with Local Rule 56.1's requirements. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015); *see also Hanover Ins. Co. v. House Call Physicians of Ill.*, 2016 WL 1588507, at

*2 (N.D. Ill. Apr. 19, 2016) (collecting cases). The Court also disregards any legal argument contained in either party's statement of facts. The evidence offered at summary judgment must only "be a kind admissible at trial," that is, it need not be in the precise form that it would be offered. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 & n.2 (7th Cir. 1994). Hearsay offered at summary judgment is every bit as inadmissible as hearsay offered at trial. *Eisenstadt v. Central Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). "Accordingly, a party cannot rely on hearsay in a Local Rule 56.1 statement of facts or response." *Boyd*, 225 F. Supp. 3d at 716. Furthermore, the Court does not consider any asserted facts "not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes." *Brown v. Target Corp.*, 2013 WL 5737344, at *1 (N.D. Ill. Oct 22, 2013).

In light of the above, to the extent either Defendants or Barnes fails to properly dispute any of the other's asserted facts, the Court has deemed those facts admitted. Where any such facts are material to the Court's analysis, the Court notes them within this Opinion.

## Analysis

## I.   Deliberate Indifference against Medical Defendants

"The Eighth amendment prohibits deliberate indifference to prisoners' serious medical needs because it constitutes an unnecessary and wanton infliction of pain." *Walker v. Wexford*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish an Eighth Amendment deliberate indifference claim, a plaintiff must prove: (1) that he suffered from an objectively serious medical

condition; and (2) that the individual defendant was deliberately, that is subjectively indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) cert denied, ---U.S.----, 140 S. Ct. 50, 205 L. Ed. 2d 38 (2019). A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a lay person." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). Defendants concede that Barnes' hemorrhoids constitute an objectively serious medical condition and focuses their arguments on the second prong of Barnes' deliberate indifference claim.

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of the risk to the inmate's health, and then the official must disregard that risk. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). In other words, the prison official must have acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks and citation omitted). A plaintiff may establish deliberate indifference by showing that the defendants "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "The standard is a subjective one: the defendant must know facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw that inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

"When a prison medical professional is accused of providing *inadequate* treatment (in contrast to no treatment), evaluating the subjective state-of-mind

element can be difficult. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (emphasis in original). Evidence of medical negligence is not enough to prove deliberate indifference. *Estelle,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). However, a doctor who provides some treatment may still be held liable if he possessed a sufficiently culpable mental state. *Zaya*, 836 F.3d at 805 (citing *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)).

The Seventh Circuit has emphasized the deference owed to the professional judgment of medical personnel. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013); *see also Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (describing the standard for "professional judgment"). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference . . . A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor in entitled to summary judgment." *Zaya*, 836 F.3d at 805.

But deference does not mean that a defendant automatically escapes liability when the defendant invokes professional judgment as a basis for a treatment decision. *Id.* Where evidence exists that the doctor "knew better than to make the medical decision that he did," then summary judgment is improper. *Whiting*, 839 F.3d at 664 (citing *Petties*, 836 F.3d at 730–31).

14

### A. Dr. Obaisi

Barnes alleges that Dr. Obaisi did not order the necessary treatment or take other actions to ensure that Barnes received the medical care he needed, including biofeedback therapy and surgery, causing Barnes to continue enduring physical pain and suffering. FAC ¶ 50. He further alleges that Dr. Obaisi's conduct represented a substantial departure from accepted professional standards and was in direct contradiction to the recommendations of the medical specialist at UIC who recommended Barnes have surgery which shows Dr. Obaisi's deliberate indifference. *Id.* ¶ 51.

Dr. Obaisi moves for summary judgment on the basis that Barnes cannot prove that Dr. Obaisi acted with a "sufficiently culpable state of mind" when treating Barnes and that the totality of Barnes' care does not support a claim of deliberate indifference. R.114, MSJ Memo. at 4–11.

### 1. Subjective Deliberate Indifference

Dr. Obaisi contends that the undisputed medical opinion shows that Barnes' hemorrhoid condition could be managed with fiber supplements, and when the condition worsened, Barnes was referred to a specialist. MSJ Memo. at 8. Dr. Obaisi reasons that because Barnes provided no evidence to criticize or dispute any of his or Dr. Aguinaldo's decisions—there is nothing to criticize. *Id.*

Barnes responds that Dr. Obaisi failed to take his pain seriously. Resp at 4. Indeed, argues Barnes, in his note of September 26, 2017, Dr. Obaisi acknowledged that Barnes' condition was worsening. *Id.* at 8. Relying on *Snow v. Obaisi*, 2021 WL

15

4439421 (N.D. Ill. Sept. 28, 2021), Barnes maintains that Dr. Obaisi's version of events "begs credulity and should be rejected." *Id.* Barnes further offers three depositions transcripts from Dr. Obaisi in three different cases to support this proposition. PSOAF ¶¶ 6–15.

In deliberate indifference cases, "[s]tate-of-mind evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment; . . . persistence in a course of treatment known to be ineffective; or proof that the defendant's treatment decision departed so radically from accepted professional judgment, practice or standards that a jury may reasonably infer that the decision was not based on professional judgment." *Walker*, 940 F.3d at 964 (citing *Whiting*, 839 F.3d at 664)). The Seventh Circuit requires that when assessing whether a prisoner has satisfied the burden of proving medical deliberate indifference, the Court must consider the totality of the inmate's medical care by the defendant. *See Dunigan v. Winnebago Cty.*, 165 F.3d 587, 591 (7th Cir. 1999).

The Court finds that no reasonable jury could conclude that Dr. Obaisi's interactions and treatment plan with regard to Barnes displayed deliberate indifference. As noted above, Barnes first saw Dr. Obaisi on September 26, 2016, and was prescribed Fiberlax. Pl.'s Resp. DSOF ¶ 14. Barnes then saw Dr. Obaisi again on January 10, 2017, for complaints of rectal bleeding and painful bowel movements and Dr. Obaisi referred Barnes to collegial review for evaluation. Pl.'s Resp. DSOF ¶ 15. Wexford approved Dr. Obaisi's request on January 18, 2017, and Barnes was seen on June 19, 2017, by Dr. Nordenstam, who noted that Barnes had prolapsed

16

hemorrhoids. Pl.'s Resp. DSOF ¶¶ 15–16. Later, on September 25, 2017, after the MRD procedure, Dr. Nordenstam recommended Barnes complete pelvic floor/biofeedback therapy. *Id.* ¶ 21. On September 27, 2017, Dr. Obaisi referred Barnes for biofeedback therapy, which Wexford ultimately approved on October 3, 2017. *Id.* ¶ 23. The record shows that within two days of getting a recommendation from Dr. Nordenstam, Dr. Obaisi submitted a request to Wexford indicating that Barnes needed biofeedback therapy. *Id.* ¶¶ 20–23. Importantly, Barnes provides no evidence that Dr. Obaisi delayed submitting a request for biofeedback therapy to Wexford or that Dr. Obaisi's conduct was deliberately indifferent towards Barnes.

Barnes attempts to challenge these facts by arguing that Dr. Obaisi acknowledged that Barnes' condition was worsening in his note from September 26, 2017. However, this entry fails to advance Barnes' argument because, contrary to Barnes' suggestion, the medical note was authored on April 2, 2018, by Dr. Okezie, not Dr. Obaisi. R. 115-2, DSOF Exh. B. at 18. In fact, Barnes even confirms this fact in his deposition. R. 115-1, DSOF Exh. A. 88:4-21. Furthermore, Barnes fails to provide any facts that would indicate that Dr. Obaisi knew that Barnes would not get the biofeedback therapy from UIC. *Bradford v. Wexford Health Sources, Inc.*, 2020 WL 586810, at *8 (N.D. Ill. Feb. 6, 2020) (noting without speculation or drawing inference upon inference, the plaintiff did not offer sufficient evidence from which a reasonable jury could infer that the Defendant knew he was providing deficient treatment).

17

As noted in detail above, Dr. Obaisi provided treatment to Barnes several times and wrote multiple referrals to send Barnes offsite to consult with a specialist at UIC and followed up on the specialist's recommendations. Nothing in the record demonstrates that Dr. Obaisi's treatment of hemorrhoids in this manner was "so far afield of accepted professional standards as to raise the inference that" Dr. Obaisi's decisions "was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)); *see also Cruikshank v. Okezie*, 2022 WL 2757664, at \* 6 (N.D. Ill. July 13, 2022) (finding that plaintiff failed to put forth sufficient evidence to create a jury question as Dr. Okezie's state of mind regarding his treatment decision of plaintiff's hemorrhoids).

Also, as Dr. Obaisi points out and the Court agrees, *Snow v. Obaisi*, is factually distinguishable to the case at hand. Dr. Obaisi's actions in 2013 and 2014—in *Snow*, with different facts involving a different inmate with a different medical need—is not indicative as to the course of treatment Dr. Obasi provided Barnes. *See Snow*, 2021 WL 4439421. Moreover, Barnes' use of Dr. Obaisi's deposition testimony from three other cases is likewise unpersuasive because he fails to introduce evidence that Dr. Obaisi's actions in those cases informs his conduct here. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

To the extent that Barnes' testimony about Dr. Obaisi's attitude toward Barnes' treatment is indicative as to his course of treatment, the Court finds this

18

contention also unavailing. In his deposition, Barnes testified that once Dr. Obaisi received Dr. Nordenstam's recommendation for therapy, he stated that "[t]his is only a doctor's recommendation. It doesn't mean I have to do this. This is his opinion. I will let you know what I'm going to do." PSOAF ¶ 31. Accepting this testimony as true, while it indicates that Dr. Obaisi may have been dismissive and had a callous attitude, that alone does not rise a constitutional violation. *English v. Obaisi*, 2014 WL 348621, at *3 (C.D. Ill. Jan. 31, 2014). "A callous attitude may be evidence in support of deliberate indifference but only in conjunction with a treatment approach that is substantially outside accepted norms." *Id.*

In sum, Barnes' evidence falls short. Based on the record, Dr. Obaisi was responsive to Barnes' medical needs and extended adequate care to Barnes. *See Estelle*, 429 U.S. at 107. Accordingly, no reasonable jury could find Dr. Obaisi's treatment strayed so far from accepted professional standards that he acted with deliberate indifference. *See McGee*, 721 F.3d at 481.

### 2. Delay in Treatment and Verifying Medical Evidence

Dr. Obaisi argues that Barnes does not have any verifying medical evidence suggesting that a delay in receiving a hemorrhoidectomy increased his risk of substantial harm or other complications and that any delay in Barnes' treatment stems from the timeframe after an outside provider refused to accept him and that was beyond Dr. Obasi's control. MSJ Memo at 8—11.

Barnes responds that, contrary to Defendants' suggestion, delays in treating a non-life threatening but painful condition may constitute deliberate indifference to a

19

serious medical need.  Resp. at 4. Barnes points out that he had been complaining of pain and bleeding since 2013 and that even after he was given a referral to Dr. Nordenstam, the need for getting surgery and the biofeedback therapy to prepare for the surgery was clear, but yet he was compelled to wait years before he received treatment. *Id.* (citing *Quinn v. Obaisi*, 2018 WL 1184736 (N.D. Ill. Mar. 7, 2018)). Dr. Obaisi replies that Barnes fails to provide that Dr. Obaisi knew about problems with UIC appointments in this timeline. R 136, Reply at 6.

In cases like the present one before the Court—where the plaintiff alleges the defendants delayed, rather than denied, medical treatment—the Seventh Circuit has required that the plaintiff "present verifying medical evidence" that the delay, and not the underlying condition, caused some harm. *Walker*, 940 F.3d at 964 (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). "Most importantly, the plaintiff must show that the defendant's actions or inaction caused the delay in his treatment." *Walker*, 940 F.3d at 964 (citing *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("Under any theory, to be liable § 1983, the individual defendant must have caused or participated in a constitutional deprivation.") (citation and internal quotation marks omitted).

As discussed above, Barnes needs verifying medical evidence to establish that the delay caused some degree of harm. Barnes' reliance on *Quinn v. Obaisi*, to establish that he has done enough to survive summary judgment is unavailing. In *Quinn,* the plaintiff submitted verifying medical evidence to show the delay in treatment prevented the plaintiff from receiving a banding procedure for his

20

hemorrhoids. 2018 WL 1184736, at *6. There, the plaintiff introduced testimony and medical records from a UIC physician that indicated that the plaintiff's "hemorrhoids had grown and were too large for the banding procedure" upon his return to UIC for treatment, which ultimately required plaintiff endure a more painful surgical excision of hemorrhoids. *Id.*

In this case, on the other hand, Barnes offers no expert opinions, no medical reports, or treating physician testimony that show that Dr. Obaisi's conduct caused any of the scheduling delays or refusals of Barnes' appointments at UIC. True, there were delays in Barnes' treatment, however, as Defendants point out any delay in Barnes' treatment that concerned receiving therapy was beyond Dr. Obaisi's control. *See Walker*, 940 F.3d at 966 (determining that the court can only "hold Dr. Obaisi liable if he had control over the circumstances that caused the delays."). The evidence provided, here, suggests that Dr. Obaisi "did what he could within the limits of his role" regarding Barnes' treatment. *Walker*, 940 F.3d at 966. That is, nothing in the record suggests that Dr. Obaisi's conduct caused any of the scheduling delays or refusals of Barnes' appointments at UIC. Ultimately, Barnes' fails to show that Dr. Obaisi's actions or inactions caused the delay in his treatment. *Walker*, 940 F.3d at 964 (citing *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)) *see also Bogan v. Wexford Health Sources, Inc.*, 2022 WL 4471895, at *6 (S.D. Ill. Sept. 26, 2022) (finding that even if an unreasonable delay occurred the defendant had no control over the approval process or subsequent scheduling).

21

All in all, Barnes fails to provide evidence that Dr. Obaisi's treatment decisions substantially departed from accepted medical practice. Significantly, Barnes offers no expert testimony and only provides his own opinion that Dr. Obaisi was deliberately indifferent or that he was responsible for the delay in Barnes' treatment. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (deliberate indifference requires more than a disagreement with a doctor's medical judgment). Accordingly, the Court finds that Barnes has provided insufficient evidence to overcome summary judgment. [13]

### B. Dr. Aguinaldo

Barnes alleges that Dr. Aguinaldo did not order the necessary treatment or take other actions to ensure that Barnes received the medical care he needed, including the biofeedback therapy and surgery. FAC ¶ 50. Furthermore, he alleges that Dr. Aguinaldo's conduct with respect to Barnes' condition represented a substantial departure from accepted professional standards, was in direct contradiction to the recommendations of the medical specialists at UIC who recommended Barnes have surgery which shows Dr. Aguinaldo's deliberate indifference. *Id.* ¶ 51.

In his motion for summary judgment, Dr. Aguinaldo advances a similar argument as Dr. Obaisi, namely that Barnes cannot prove that Dr. Aguinaldo acted with a "sufficiently culpable state of mind" when treating Barnes and that the totality

---

[13]Because the Court grants summary judgment in Dr. Obaisi's favor on Barnes' deliberate indifference claim, it need not address Dr. Obaisi's contention that Barnes is barred from recovering punitive damages against Dr. Obaisi's Estate.

of Barnes' care does not support a claim of deliberate indifference. Barnes responds that Dr. Aguinaldo did not take Barnes' pain seriously. Resp. at 4. He narrows his focus to one event, the July 29, 2016, meeting with Dr. Aguinaldo to show that Dr. Aguinaldo was deliberately indifferent. *Id.* at 4.

Here, the medical records show that on July 29, 2016, Barnes presented to Dr. Aguinaldo for a complaint regarding hemorrhoids. This is where the parties' versions of the event diverge. The medical records show that Dr. Aguinaldo performed a physical examination finding that Barnes was not in distress, he also assessed Barnes' stool and found no blood in Barnes' stool, and lastly assessed Barnes' rectum finding no rectal bleeding or external hemorrhoids. DSOF ¶ 13. However, Barnes argues that on that date he was not tested by Dr. Aguinaldo but was only asked if there was blood in his stool. Resp. at 4–5.

Even accepting Barnes' version of the event, that Dr. Aguinaldo did not perform a physical examination, it only indicates that Dr. Aguinaldo knew of a risk of harm to Barnes—that he complained of hemorrhoids—but this does not show that Dr. Aguinaldo disregarded that risk or caused any harm. Deliberate indifference requires "more than negligence and approaches intentional wrongdoing." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *see also Estelle*, 429 U.S. at 106. The evidence must show that the Dr. Aguinaldo acted with a "sufficiently culpable state of mind," meaning that he knew or was aware of—but disregarded—a substantial risk of harm to an inmate's health. *Farmer*, 511 U.S. at 834. Barnes fails to show such evidence. Without medical evidence of inadequate treatment, Barnes' testimony

23

regarding that visit is unhelpful as to Dr. Aguinaldo's mindset. *See Walker v. Zunker*, 30 Fed. Appx. 625, 628 (7th Cir. 2002) ("without any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact"); *see also Lyons v. Aguinaldo*, 2018 WL 3861546, at *5 (N.D. Ill. Aug. 14, 2018). This visit only demonstrates that Barnes disagrees with the treatment that he received that day. *See Berry*, 604 F.3d at 441.

As best as the Court can discern, Barnes seems to abandon his initial claims in his complaint that Dr. Aguinaldo did not ensure that he received biofeedback therapy and surgery. No matter, nothing in the record shows that Dr. Aguinaldo was aware or was involved with Barnes' scheduling for biofeedback therapy and that he aware of or involved with the delay that occurred in Barnes receiving biofeedback therapy. *See Petties*, 836 F.3d at 728 ("[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm.").

At bottom, based on the record before this Court, no reasonable jury could find that Dr. Aguinaldo was subjectively indifferent to Barnes' serious medical needs.

## II.   *Monell* Claim against Wexford

Barnes alleges that Wexford in the course of its providing services to IDOC patients, had practice of "pushing off" medical treatment that were likely to result in costs to the institution or a reduction in its anticipated profits. FAC ¶ 32. Barnes further alleges that Wexford's "collegial process" was designed to and necessarily served to encourage delay in the providing of treatment to IDOC patients and thus violated the Eighth Amendment. FAC ¶¶ 34–36.

Defendants contend that the collegial review process is constitutional, and Barnes fails to demonstrate either an unconstitutional policy or a widespread practice exists or that deliberate indifference occurred because of such a policy or widespread practice. (citing *Howell v. Wexford Health Sources, Inc.,* 987 F.3d 647, 655 (7th Cir. 2021) and *Haywood v. Wexford Health Sources, Inc.,* 2017 WL 783000, *11 (N.D. Ill. Mar. 1, 2017)). MSJ Memo. at 11–12.

Barnes counters that the collegial review process is unconstitutional and that because Wexford has been sued frequently this shows that the practice of "collegial review" was used to delay or deny treatment to inmates. He relies on the 2018 Court Monitor's Report in *Lippert v. Godinez* (*Lippert* Report) and a random assortment of lawsuits filed by other inmates against Wexford to support this proposition. Resp. at 11. In reply, Defendants argue that the *Lippert* Report is inadmissible hearsay (citing *Dean v. Wexford Health Sources, et al.*, 18 F.4th 214 (7th Cir. 2021)). Reply at 13.

In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that a municipal government is a "person" subject to damages under 42 U.S.C. § 1983. 436 U.S. 658 (1978). The Seventh Circuit has extended *Monell* to § 1983 claims brought against "private companies acting under color of state law." *Chatham v. Davis*, 839 F.3d 679, 685, (7th Cir. 2016). This means that government contractors—for example, a corporate entity like Wexford—are not immune from constitutional tort liability and a plaintiff who brings § 1983 claims against them must challenge the conduct that is "properly attributable" to the defendants

themselves. *Sterling*, 2021 WL 5906067, at *8 (internal quotations and citations omitted). A corporate entity violates an inmate's constitutional rights "if it maintains a policy that sanctions the maintenance of prison conditions that infringes upon the constitutional rights of the prisoners." *Estate of Novack ex rel v. Cnty of Wood*, 226 F.3d 525, 530 (7th Cir. 2000).

A plaintiff may offer evidence of "an express policy," "widespread practice that is so well-settled as to amount to a policy" or that someone with "final policymaking authority for decisions regarding" the plaintiff's medical treatment caused his injury. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). Next, a plaintiff must show that "the policy or custom demonstrates municipal fault," *i.e.*, deliberate indifference. *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). "This is a high bar." *Id.* at 987. Thus, if a municipality's action is not unconstitutional on its face, a plaintiff "must prove that that it was obvious that the municipality's action would lead to constitutional violations that the municipality consciously disregarded those consequences." *Id.* Finally, a plaintiff must show that the municipality's action was "moving force" behind the constitutional deprivation. *Id.* Put another way, a "*Monell* plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation." *Dean*, 18 F.4th at 236.

As noted above, Barnes asserts a theory that an express policy (collegial review) deprived him of his constitutional rights. As discussed below, Barnes does not

show two prerequisites to *Monell* liability—municipal fault or moving-force causation.

As an initial matter, the Court agrees with Defendants that *Howell* established that the collegial review process itself is not a facially unconstitutional policy. In *Howell*, the Seventh Circuit concluded that Wexford's collegial process "is not unconstitutional on its face," as such to support a finding that the collegial review process was the cause of an Eighth Amendment violation more evidence is required. 987 F.3d at 651. When the policy at issue is not unconstitutional on its face "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault of the [corporation], and the causal connection between the 'policy' and the constitutional deprivation." *Dean*, 18 F.4th at 236 (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality)).

Specifically, the Seventh Circuit in *Dean* clarified that a plaintiff addressing a policy that is not unconstitutional on its face "must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." 18 F.4th at 235. Put another way, such a plaintiff "must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation." *Id*. The court in *Dean* explained that a prior pattern of similar violations puts municipality on notice under *Monell* of unconstitutional consequences of its policy, such that its continued adherence to the policy might establish the conscious disregard for the

27

consequences of [its] action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* at 236 (citation omitted).

Here, Barnes directs the Court to a multitude of collegial review lawsuits brought against Wexford and a 2018 report from an outside consultant about Wexford's collegial process known as the *Lippert* Report. But as the nonmoving party, to overcome summary judgment, Barnes had to submit evidence that would be admissible at trial under the Federal Rules of evidence. *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003); Fed. R. Civ. P. 56(c). Both the lawsuits and the *Lippert* Report are problematic, for the reasons discussed below.

Beginning with Barnes' laundry list of lawsuits against Wexford in support of his *Monell* claim, *see* Resp. at 11, the Court is initially dubious that mere allegations of other inmates would be admissible to establish a widespread unconstitutional practice at Barnes' trial. What's more is that Barnes fails to explain how the inmates in these other lawsuits are similarly situated to Barnes, or how the lawsuits establish a widespread unconstitutional practice. For instance, Barnes argues that he should be able to use one case in particular, *Davis*, because the case "involves specific findings of fact which favor the prisoners and should be construed against Wexford." Resp. at 11. Yet, Barnes does not cite to the record, nor provide a case cite for *Davis*, and the Court "is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 744 (7th Cir. 2007). In addition, Barnes fails to explain how the lawsuits are comparable to his

28

specific situation. While Barnes' evidence of *Monell* comparators need not be perfect, Barnes has provided no substantive evidence or connection between his case and his theory that Wexford's collegial review process was used to delay or deny inmate treatment. *See Howell*, 987 F.3d at 657. "A defendant cannot get to trial on the *Monell* claim simply by showing that [Wexford] gets sued a lot." *Black v. City of Chicago*, 2022 WL 425586, at *6 (N.D. Ill. Feb. 11, 2022).

As for the *Lippert* Report, the Seventh Circuit in *Wilson v. Wexford Health Sources, Inc.*, found the *Lippert* Report to constitute inadmissible hearsay where a plaintiff offers it to prove the truth of the matters asserted therein—that is, that Wexford maintained a practice of delaying or refusing inmates' access to specialists for the purpose of cost cutting. 932 F.3d 513, 522 (7th Cir. 2019); *Buck v. Wexford Health Sources, Inc.*, 2021 WL 4061751, at *9 (N.D. Ill. Sept. 7, 2021); *Boyce v. Wexford Health Sources Inc.*, 2017 WL 1436963, at *5 (N.D. Ill. Apr. 24, 2017); *Mathis v. Carter*, 2017 WL 56631, at *4–5 (N.D. Ill. Jan. 5, 2017); *Diaz v. Chandler*, 2016 WL 107031303, at *12 (N.D. Ill. Mar. 18, 2016). As Defendants point out, and the Court agrees, Barnes' intended use of the *Lippert* Report is inadmissible hearsay because he is using it to demonstrate that the collegial review process was designed to and necessarily served to encourage delay in the providing of treatment to IDOC inmates. FAC ¶¶ 34–36; Resp at 10; Reply at 4–5.[14] The Court therefore finds that Barnes has

---

[14]"Evidence admitted only for notice cannot establish that a municipality acted with deliberate indifference unless the plaintiff also has substantive proof that the 'noticed' problems actually existed." *Dean*, 18 F. 4th at 238. Barnes waived any argument that he has

failed to bring forward admissible evidence to create a question of fact with respect to the widespread practice aspect of his *Monell* claim.

Indeed, rather than direct the Court to admissible evidence of a widespread practice, Barnes merely directs the Court to inadmissible evidence and his personal opinion that the collegial review process was designed to and necessarily served to encourage delay in the providing of treatment to IDOC patients. That is, Barnes fails to show how the collegial review process harmed other inmates. *See Dean*, 18 F.4th at 237 ("Dean did not introduce any substantive evidence of a pattern or practice of similar violations. He did not offer substantive evidence of collegial review causing unconstitutional delays for other prisoners."). As discussed above, this is a crucial piece of evidence for a *Monell* claim because "a prior pattern of similar violations puts the municipality on notice of the unconstitutional consequences of its policy such that its continued adherence to the policy might establish the conscious disregard for the consequences of its action—deliberate indifference—necessary to trigger municipal liability." *Id.* at 236 (internal citation omitted).

Even if Barnes could establish a widespread pattern or practice, he would still need to show causation. *Dean*, 18 F.4th at 239 (noting that the plaintiff must show that "collegial review itself—not simply the actions of the employees administering it—directly caused his constitutional deprivation."). Barnes failed to respond to Defendants' argument that his claim against Wexford also fails because he cannot

---

submitted the *Lippert* Report for the purposes of notice. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

show causation as required under *Monell*. MSJ Memo at 12. Therefore, Barnes waives any argument in opposition. *See Bonte*, 624 F.3d at 466 ("Failure to respond to an argument . . . results in waiver."). No matter, as Barnes fails to adduce any evidence which shows that the collegial review policy itself caused the alleged violation. *See Williams*, 2022 WL 4132443, at *6 (noting that the plaintiff would need to establish that Wexford's policy itself caused the unconstitutional violation). Barnes has made no showing or introduced evidence from which a reasonable jury could conclude that the "moving force" behind any injury he suffered was a policy or practice that was attributable to Wexford. *See Sterling*, 2021 WL 5906067, at *11 (N.D. Ill. Dec. 13, 2021). For these reasons, the Court grants Wexford's motion for summary judgment.

## Conclusion

The record here shows that Barnes suffered from a serious and painful medical condition and that there were real delays to his treatment. The Court's opinion should not be taken to cast doubt on the gravity of Barnes' suffering. However, Barnes failed to put forth the evidence needed pursuant to Fed. R. Civ. P. 56 and binding caselaw to overcome summary judgment. The Court must therefore grant Defendants' motion for summary judgment. The Court enters summary judgment in favor of Defendants and against Barnes on Counts I, II, and III. This civil case is terminated.

Dated: November 23, 2022

United States District Judge
Franklin U. Valderrama

31